# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Edgar V.P.T. | Civ. No. 26-1518 (JWB/DJF) |
| Petitioner, | |
| v. | |
| Pamela Bondi, *Attorney General*; Kristi Noem, *Secretary, U.S. Department of Homeland Security*; U.S. Department of Homeland Security; Todd M. Lyons, *Acting Director of Immigration and Customs Enforcement*; U.S. Immigration and Customs Enforcement; David Easterwood, *Acting Director, Saint Paul, Minnesota Field Office Immigration and Customs Enforcement*; and Joel Brott, *Sheriff of Sherburne County*, | **ORDER ON PETITION FOR WRIT OF HABEAS CORPUS** |
| Respondents. | |

Michael Warkel, Esq., Gustafson Gluek PLLC, counsel for Petitioner.

David W. Fuller, Esq., and Matthew Isihara, Esq., United States Attorney's Office, counsel for federal Respondents.

This case asks whether Respondents may detain a noncitizen under 8 U.S.C. § 1225(b)(2) after previously releasing him from custody under 8 U.S.C. § 1226 and placing him in removal proceedings under 8 U.S.C. § 1229. The answer is no. Because Respondents previously exercised authority to release Petitioner Edgar V.P.T. under § 1226, that statute—not § 1225—governs detention while removal proceedings remain pending.

Respondents initially moved to dismiss this Petition, but after withdrawing that

motion, they filed an amended response asserting all arguments raised in *Avila v. Bondi*, Civ. No. 25-3741 (JRT/SGE), 2025 WL 2976539 (D. Minn. Oct. 21, 2025) and *Buenrostro-Mendez v. Bondi*, No. 25-20496, ___ F.4th ___, 2025 WL 323330 (5th Cir. Feb. 6, 2026). (*See* Doc. No. 10.)

Respondents' position that § 1225 applies after a noncitizen has been released from custody has been often rejected in this District. *See, e.g.*, *Maldonado v. Olson*, 795 F. Supp. 3d 1134, 1142–48, 1150–52 (D. Minn. 2025); *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 968–970 (D. Minn. 2025); *Mayamu K. v. Bondi*, Civ. No. 25-3035 (JWB/LIB), 2025 WL 3641819, at *7–8 (D. Minn. Oct. 20, 2025). Therefore, the Petition is granted to the extent that it requests release.

## BACKGROUND

Petitioner is a citizen of Ecuador. (*See* Doc. No. 1, Petition ¶¶ 18, 26.) As a minor, he entered the United States without inspection on April 17, 2023 and shortly thereafter encountered the United States Border Patrol. (*Id.* ¶¶ 7, 27; Doc. No. 8, Minner Decl. ¶ 6; Doc. No. 8-1 at 1–2; Doc. No. 8-2 at 1; Doc. No. 8-4 at 3.) He was issued a Form I-862, Notice to Appear designating him "an alien present in the United States who has not been admitted or paroled" and charging inadmissibility under 8 U.S.C. §§ 1182(a)(7)(A)(i)(I) and 1182(a)(6)(A)(i). (Petition ¶¶ 7, 27; Minner Decl. ¶ 6; Doc. No. 8-2 at 1.) The Notice placed Petitioner in removal proceedings pursuant to 8 U.S.C. § 1229a, which governs full removal proceedings before an Immigration Judge. (*See id.*) He was then released from custody on his own recognizance on April 19, 2023. (Petition ¶¶ 7, 27; Minner Decl. ¶ 6; Doc. No. 8-1 at 3.)

Although the Order of Release on Recognizance is not on record, the standard Form I-220A states that the release was "[i]n accordance with section 236 of the Immigration and Nationality Act," which corresponds with § 1226. Neither side submitted evidence showing that order was cancelled or revoked.

Petitioner alleges that he has complied with all requirements of his immigration status and has never been convicted of a violent crime or any other crime that would justify detention under 8 U.S.C. § 1226(c). (Petition ¶¶ 27, 31, 47, 68.)

Respondents claim that on February 1, 2026, Immigration and Customs Enforcement ("ICE") agents handcuffed Petitioner during a traffic stop and placed him in the back of their car. (Minner Decl. ¶ 8; Doc. No. 8-3.) Petitioner soon thereafter fled the vehicle prompting Respondents to seek and receive an arrest warrant from United States Magistrate Judge David T. Schultz on February 11, 2026. (*Id.*; *see also United States v. Toalombo*, No. 26-mj-146 (DTS) ("*U.S. v. Toalombo*"), Doc. No. 2 (D. Minn.).)

On February 18, 2026, Petitioner was stopped on the way to work and apprehended by ICE. (Petition ¶ 32; Minner Decl. ¶ 9; Doc. No. 8-4 at 2.) He was first taken to the Whipple Federal Building in Fort Snelling, Minnesota, and then to federal detention in Elk River, Minnesota. (Petition ¶¶ 32, 34.) That same day—February 18, 2026—Petitioner's counsel filed the Petition. (*See* Doc. No. 1.)

On February 23, 2026, Respondents moved to dismiss the Petition for lack of jurisdiction and for naming the incorrect custodians. (*See* Doc. No. 6.) According to Respondents, Petitioner had been transferred to the custody of the United States Marshals Service ("USMS") on February 19, 2026 for pending prosecution under 18 U.S.C.

§ 751(a). (*Id.*) Respondents, however, incorrectly stated that the Petition was filed on January 20, 2026 (Doc. No. 7 at 1), and failed to mention that on February 20, 2026—three days before Respondents filed their motion to dismiss the Petition—the Government moved to dismiss the criminal indictment against Petitioner (*U.S. v. Toalombo*, Doc. Nos. 14, 15).

Magistrate Judge Schultz dismissed the indictment without prejudice on February 24, 2026. (*Id.* at Doc. No. 17.) Later that day, Respondents filed an amended response to the Petition and withdrew their motion to dismiss. (*See* Doc. No. 10.) As of the date of this Order, ICE's detainee locator system indicates that Petition is detained in Sherburne County.

## DISCUSSION

### I.   Legal Standard

A writ of habeas corpus may issue where a petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner bears the burden of establishing, by a preponderance of the evidence, that the challenged detention lacks a lawful statutory basis. *See Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

Immigration detention, like all civil detention, must rest on an express congressional grant of authority and must bear a reasonable relation to its statutory purpose. *Zadvydas v. Davis*, 533 U.S. 678, 687, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). Section 2241 confers jurisdiction to determine whether the Executive Branch has statutory authority to detain an individual, including in the

4

immigration context. *See id.* at 687–88.

## II.   Analysis

Petitioner challenges only the lawfulness of his detention under federal law. He does not contest any removal order, the conduct of removal proceedings, or the execution of removal. Therefore, jurisdiction lies under 28 U.S.C. § 2241 to review the legal basis for custody. *See, e.g.*, *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154–55 (D. Minn. 2025). Because the Petition is not directed at removal, statutory channeling provisions do not apply either. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

The Immigration and Nationality Act ("INA") distinguishes between inspection, removal proceedings, and detention authority. "Inspection" is the process by which immigration officers determine whether a noncitizen seeking entry at the border or a port of entry may be admitted to the United States. *See* 8 U.S.C. § 1225(a). Section 1225 governs that process and generally requires detention. *Id.*; *see also Maldonado*, 795 F. Supp. 3d at 1149.

Section 1226, by contrast, governs detention of noncitizens already present in the United States. *Jennings*, 138 S. Ct. at 846. Detention under § 1226(a) is not mandatory and permits release on bond or recognizance. *Maldonado*, 795 F. Supp. 3d at 1149–50.

Respondents did not include a detailed response to Petitioner's claim that § 1225(b)(2) does not apply to him. They instead rely on the arguments asserted in *Avila*, 2025 WL 2976539, and the recent decision in *Buenrostro-Mendez*, No. 25-20496, __

F.4th __[1], to support their assertion that § 1225(b)(2) authorizes the detention of certain "applicants for admission" pending removal proceedings. Although those cases are factually distinct because they involved petitioners who *did not* encounter immigration officials when they entered the country, Respondents maintain that the legal issues overlap.

The vast majority of district courts—including this Court—considering the issues raised in *Avila* and *Buenrostro-Mendez* have determined that the text, structure, and function of the INA's detention provisions all indicate that § 1225 does not apply to noncitizens released to the interior of the country like Petitioner. *See Eliseo A.A. v. Olson*, Civ. No. 25-3381 (JWB/DJF), 2025 WL 2886729 (D. Minn. Oct. 8, 2025); *Mayamu K. v. Bondi*, Civ. No. 25-3035 (JWB/LIB), 2025 WL 3641819 (D. Minn. Oct. 20, 2025); *Khalid B.Q. v. Noem*, Civ. No. 25-4584 (JWB/DJF), Doc. No. 10 (D. Minn. Dec. 18, 2025); *Xuseen A. v. Bondi*, Civ. No. 25-4514 (JWB/DJF), Doc. No. 16 (D. Minn. Dec. 19, 2025).

*Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), does not alter the result either. Respondents have previously cited to it as if it reflects an independent adjudicatory resolution of statutory ambiguity. It does not. The Board of Immigration

---

[1]   Respondents cite *Buenrostro-Mendez* for the proposition that § 1225(b)(2)(A) mandates detention without bond for noncitizens encountered in the interior. This Court is not persuaded. That interpretation turns "seeking admission" into a perpetual status rather than a present act tied specifically to inspection or entry. Read in context of the INA as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, § 1226 governs detention of noncitizens already present in the United States pending removal proceedings.

Appeals ("BIA") is a component of the Department of Justice ("DOJ") and operates under the Attorney General's supervisory authority. Its precedents are subject to review, revision, and overruling by the Attorney General, who sets binding interpretations of the INA for the Executive Branch. *Yajure Hurtado* thus reflects the DOJ's adopted litigation position concerning the scope of § 1225(b)(2), not an interpretation generated independently of that position. *See* Memorandum from Rodney S. Scott, U.S. Customs & Border Protection, Detention of Applicants for Admission (July 10, 2025) (memo from DHS requiring that all "applicants for admission" be detained under § 1225(b)(2) during removal proceedings).

And even if *Yajure Hurtado* were such an independent interpretation, it would run headlong into the statute's text and structure for the reasons already explained. Where an agency's reading conflicts with the statute Congress enacted, it does not control. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (explaining that only long-standing and consistent agency interpretations merit weight); *see also Belsai D.S. v. Bondi*, Civ. No. 25-3682 (KMM/EMB), 2025 WL 2802947, at *7 n.5 (D. Minn. Oct. 1, 2025).

In habeas review, the question is not whether the Executive Branch has spoken with one voice—whether through the DOJ or BIA—but whether the detention authority it asserts is grounded in statute. That determination remains for the Article III courts. *See Zadvydas*, 533 U.S. at 688.

The analysis here is straightforward. Respondents placed Petitioner in removal proceedings under § 1229a, released him from custody under § 1226, and allowed him to

remain in the community for more than two years. Nothing in the record—aside from the recent criminal indictment, which has since been dismissed—suggests Respondents ever revoked that release based on flight risk, danger, changed circumstances, or any other reason.

Section 1225(b)(2) provides no authority to revisit that custody determination later. The Supreme Court has consistently treated §§ 1225 and 1226 as addressing different populations at different procedural moments, not as interchangeable sources of detention authority. *Jennings*, 138 S. Ct. at 836–38. Nothing in § 1225 authorizes Respondents to revive mandatory detention just by recharacterizing a previously released noncitizen as an applicant for admission. *See, e.g.*, *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 969–70 (D. Minn. 2025). The statute contains no mechanism for that switch. Allowing Respondents to toggle between detention regimes in this way would collapse the statutory structure Congress enacted and render § 1226 largely superfluous.

On this record, Petitioner's continued detention rests on a statute and an interpretation that do not apply and is unlawful. *See Khalid B.Q.*, Civ. No. 25-4584, Doc. No. 10 at 6; *Xuseen A.*, Civ. No. 25-4514, Doc. No. 16 at 7. Thus, he is entitled to a writ of habeas corpus that grants his immediate release with the conditions in his original Order of Release on Recognizance remaining in place. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (describing release as the "typical remedy" for "unlawful executive detention").

Respondents argue that if Petitioner has been misclassified under § 1225, the proper remedy is a bond hearing under § 1226 rather than release. But a bond hearing

8

presupposes lawful detention authority under § 1226. Where that authority has not been invoked or established, ordering a bond hearing would treat the absence of statutory power as a mere procedural irregularity rather than a substantive defect. Habeas relief requires more because it addresses the lawfulness of custody itself, not the adequacy of procedures that might attend some other, uninvoked challenge to detention. *See Wajda v. United States*, 64 F.3d 385, 389 (8th Cir. 1995). For detention that lacks a lawful predicate, release is an appropriate remedy. *Munaf*, 553 U.S. at 693.

Where the record shows Respondents have not identified a valid statutory basis for detention in the first place, the remedy is not to supply one through further proceedings. Because Petitioner has shown Respondents have not invoked a provision of the INA that authorizes his continued detention, the Petition for a Writ of Habeas Corpus is granted, and Petitioner's other habeas claims are not reached.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS HEREBY ORDERED** that:

1.      Petitioner Edgar V.P.T.'s Petition for Writ of Habeas Corpus (Doc. No. 1) is **GRANTED**.

2.      **Release**. Respondents shall immediately release Petitioner from custody. He must be released in Minnesota subject only to the conditions in his 2023 release on recognizance. At the time of Petitioner's release, Respondents shall return to Petitioner all personal property in Respondents' custody or control, including but not limited to, passports, identity papers or licenses, immigration records, prescribed medications, and

treatment-related equipment. Release may not be delayed for any reason related to the retrieval, processing, or return of such property. Any delay or failure to effectuate release in accordance with this paragraph constitutes noncompliance with this Order.

If Petitioner is currently held outside Minnesota, Respondents shall immediately initiate Petitioner's return to Minnesota for the sole purpose of effectuating release. Respondents shall not delay initiation of return based on administrative convenience, transportation availability, or detention-capacity considerations.

Upon Petitioner's arrival in Minnesota, Respondents shall effectuate release forthwith. If, at the time release would otherwise occur, weather conditions would expose Petitioner to extreme cold or other reasonably dangerous conditions, Respondents may delay physical release only for the brief period necessary to effectuate release in a safe manner. Respondents shall employ the earliest reasonably available safe means of release and may not delay release where a safe option is available. Any such delay must be strictly limited and must not be used to justify continued custody, supervision, or discretionary release authority.

3.      **Notice.** Respondents shall file an update on the status of Petitioner's release by 4:40 p.m. on February 27, 2026. In the update, Respondents must confirm the time, date, and location of the release or anticipated return and release. If Petitioner has been removed from Minnesota, Respondents must file a confirmation of the time, date, and location of release promptly upon Petitioner's arrival in Minnesota.

4.      Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in

conjunction with release (including release on recognizance or similar instruments), without prior notice to and authorization from the Court, or absent a new and independently lawful custody decision properly executed under the law. For the avoidance of doubt, Respondents' compliance with this Order requires Petitioner's immediate release in Minnesota without any newly issued instrument that either imposes new conditions of supervision or restraint or restates previously imposed conditions. Any such conditions imposed at the time of Petitioner's release shall be considered null and void as inconsistent with this paragraph.

5.      Respondents may not re-detain Petitioner under a statutory theory this Court has rejected in this proceeding absent materially changed circumstances.

6.      Petitioner's other claims are not reached.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: February 25, 2026                          *s/ Jerry W. Blackwell*
Time: 4:40 p.m.                                  JERRY W. BLACKWELL
                                                 United States District Judge

11